**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**F I L E D**
April 8, 2009

No. 07-40963

UNITED STATES OF AMERICA, ex rel. JAMES H. GRUBBS, M.D.

Plaintiff-Appellant

v.

RAVIKUMAR KANNEGANTI, M.D.; GEORGE E. GROVES, M.D., KASHI S.
BAGRI, M.D.; SHARAD B. KULKARNI, M.D.; SRIYA DE SILVA, M.D.;
BAPTIST HOSPITALS OF SOUTHEAST TEXAS, doing business as
Memorial Hermann Baptist Beaumont Hospital; JOHN DOE ONE; JOHN
DOE TWO; JOHN DOE THREE; JOHN DOE FOUR; JOHN DOE FIVE;
SUDHEER KAZA, M.D.; and RAJEN DESAI, M.D.

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.
PATRICK E. HIGGINBOTHAM:

This is an appeal from a 12(b)(6) dismissal of a *qui tam* action under the
False Claims Act brought by Dr. Grubbs against his employer, Memorial
Hermann Baptist Beaumont Hospital, five of the Hospital's psychiatric doctors,
and two other doctors. The action alleges the Hospital and doctors billed
Medicare and Medicaid for services not performed. The district court found that
the complaint lacked sufficient detail regarding false bills actually presented to

the Government and dismissed for failure to plead fraud with particularity as required by FED. R. CIV. P. 9(b).

I

The False Claims Act prohibits, in relevant part, 1) the presentment of a false claim to the Government, 2) the use of a false record or statement to get a false claim paid, and 3) conspiracies to get a false claim paid.[1] Liability for violation includes a liquidated civil penalty and damages, which need not be shown to state a claim but which if shown will be doubled and may be trebled.[2]

The Act is remedial, first passed at the behest of President Lincoln in 1863 to stem widespread fraud by private Union Army suppliers in Civil War defense contracts. It is "intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side."[3] To aid the rooting out of

---

[1] *See* 31 U.S.C. § 3729(a)(1-3):

Any person who--

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . .

is liable to the United States Government . . . [.]

[2] *Id.* § 3729(a).

[3] S. Rep. No. 99-345, at 11 (1986) (quoting *U.S. v. Griswold*, 24 F. 361, 266 (D. Or. 1885)). Suits brought by private parties are on behalf of the executive branch of the Government, which still vocally maintains the goal of uncovering fraud, especially in the medical context, as indicated by President Obama's February 24, 2009 speech to the joint session of Congress: "We will root out the waste, fraud, and abuse in our Medicare program that doesn't make our seniors any healthier."

fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators, who serve as a "posse of *ad hoc* deputies to uncover and prosecute frauds against the government."[4] In *qui tam*[5] suits brought by private persons on behalf of the Government the statute entitles the relator to between ten and thirty percent of any recovery made on behalf of the Government, depending on the extent of the relator's contribution to the action.[6]

## II

According to Dr. Grubbs' *qui tam* complaint, Memorial Hermann Baptist Beaumont Hospital hired him in January 2004 to work as a psychiatrist. In February 2004, and before his first weekend on-call shift, the complaint alleges that two Defendants, Dr. Groves, the Chairman of the Medical Staff of the Hospital's Psychiatric Subsection, and Dr. Kanneganti, a psychiatrist at the Hospital, invited Dr. Grubbs to dinner at a Pappadeaux restaurant. Over dinner, the doctors allegedly divulged to him their fraudulent billing scheme and instructed him on how he was to contribute to the scheme. According to Dr. Grubbs' recitation of the conversation, the doctors instructed him that during weekend on-call shifts doctors meet with the nursing staff to get updates on current patients. The doctors then see the patients only "as needed" or when "something acute's going on," but bill every day as a regular "face-to-face" hospital visit.

Dr. Grubbs' complaint further alleges that over his on-call weekend, the nursing staff did indeed attempt to assist him in recording face-to-face physician

---

[4] *U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 49 (4th Cir. 1992).

[5] "Qui tam" is an abbreviation for *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who as well for the king as for himself sues in this matter." *Black's Law Dictionary* 1262 (7th ed. 1999).

[6] 31 U.S.C. § 3730(d). Under the original version of the statute, the relator received one-half of the recovery. Act of Mar. 2, 1863, 2 Stat. 696.

visits that had not occurred and that were based solely on information obtained through nursing contacts with the patients. Appalled, Dr. Grubbs allegedly reported the practice to a hospital administrator the next day, who to Dr. Grubbs' further dismay, retorted: "You certainly figured that out quickly."

Fifteen months later, Grubbs filed suit as a *qui tam* relator alleging violations of the False Claims Act's presentment provision in § 3729(a)(1), the false record or statement provision in § 3729(a)(2), and the conspiracy provision in § 3729(a)(3). In addition to the described scheme, the complaint avers at least one overt act of false billing for each doctor, each similar to this paragraph:

> Dr. Desai billed Medicaid for psychotherapy services on January 8, 2004, CPT Code #90805, which constituted a false claim in that the medical records indicate that no psychotherapy was provided by Desai on that date.

Time was given for the United States to intervene,[7] but after it did not the district court unsealed the suit. Defendants then filed multiple separate motions to dismiss for failure to meet the pleading requirements of FED. R. CIV. P. 9(b).[8] A magistrate judge recommended dismissal of all claims for failure to plead the circumstances of the alleged fraud with particularity. Dr. Grubbs filed objections to the report and a motion seeking leave to file a Third Amended Complaint, which he attached. The district court adopted the magistrate's report in full and dismissed with prejudice, denying Dr. Grubb's motion for leave

---

[7] A False Claims Act complaint is first served on the Government and remains under seal for sixty days while the Government decides whether to intervene and take over the action. 31 U.S.C. § 3730(b)(2).

[8] "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

to amend. Dr. Grubbs now appeals. We review the district court's grant of Defendants' motion to dismiss for failure to state a claim *de novo*.[9]

### III

### A

We have held, along with several of our sister circuits, that a complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b),[10] which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a "short and plain statement of the claim." The particularity demanded by Rule 9(b) is supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring "enough facts [taken as true] to state a claim to relief that is plausible on its face."[11] The *Twombly* standard replaces the lenient and longstanding rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[12] The new reading raises a hurdle in front of what courts had previously seen as a plaintiff's nigh immediate access to discovery—modest in its demands but wide in its scope.

In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims

---

[9] *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999).

[10] *See id.* at 308–09 ("A special relaxing of Rule 9(b) is a *qui tam* plaintiff's ticket to the discovery process that the statute itself does not contemplate."); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 228 (1st Cir. 2004) (listing the circuits that have applied Rule 9(b)'s heightened pleading standard to False Claims Act complaints).

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[12] *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology,"[13] but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not "reflect a subscription to fact pleading"[14] and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true.

Courts have attempted to clarify Rule 9(b) by articulating workable constructions. The frequently stated, judicially-created standard for a sufficient fraud complaint, the applicability of which to the False Claims Act we will consider later, instructs a plaintiff to plead "the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby."[15]

## B

Several circuits have considered particularity challenges to False Claims Act complaints, focusing largely on the Act's presentment requirement. A frequently cited case, and the case primarily relied on by the district court here, is *United States ex rel. Clausen v. Laboratory Corporation of America, Inc.*[16] In *Clausen*, the Eleventh Circuit affirmed the dismissal of a complaint in which a company outsider alleged a billing scheme, conveyed to him by a friend, and conclusively stated that the scheme resulted in the defendants submitting bills to the Government. The court stated that presentment of a false claim is the *sin qua non* of a False Claims Act violation without which "there is simply no

---

[13] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

[14] *Id.*

[15] *Russell*, 193 F.3d at 308.

[16] 290 F.3d 1301, 1311 (11th Cir. 2002).

actionable damage to the public fisc."[17]  Because of the provision's focus on presentment, it held that it is insufficient for a plaintiff "merely to describe a private scheme in detail" without offering "some indicia of reliability" that an actual false claim for payment was made to the Government.[18]  The *Clausen* court made plain its position that to plead a presentment claim, the minimum indicia of reliability required to satisfy the particularity standard are the specific contents of actually submitted claims, such as billing numbers, dates, and amounts.

At least two circuits have favorably cited the Eleventh Circuit's *Clausen* rule.[19]  The First Circuit considered a case in which a hospital employee alleged that the hospital was submitting Medicare claims for services that were provided improperly or not at all, but could not provide details on specific bills.  The First Circuit upheld the dismissal because the complaint failed to meet this standard:

> [A] relator must provide details that identify particular false claims for payment that were submitted to the government.  In a case such as this, details concerning the dates of the claims, the

---

[17] *Id.*

[18] *Id.*

[19] *See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232 (1st Cir. 2004).  The Sixth Circuit has also cited *Clausen* to uphold a dismissal in a False Claims Act case in which the relator was "unable to identify a specific claim submitted directly to the United States."  There, however, the relator came forward with only a vague scheme and alleged that virtually every claim made by the defendant was fraudulent, with no indication of why or how.  Thus the complaint would have failed for reasons more fundamental than not offering the contents of a specific claim.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563–65 (6th Cir. 2003).  The Seventh, Third, and Ninth Circuits have also cited *Clausen* for the proposition that a relator must allege details of a false claim actually submitted to the Government, but the appeals in these circuits were all brought at the summary judgment stage, after discovery had been completed.  *See U.S. ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853 (7th Cir. 2006)*; U.S. ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432 (3d Cir. 2004)*; U.S. ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002).  Requiring detailed evidence of a false claim post-discovery is not necessarily indicative of what details these courts would require at the pleading stage.

content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity.[20]

The complaint before the First Circuit offered few details supporting an inference that bills were presented. As the court stated: "[T]he complaint never specifies the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement by Medicare or Medicaid. It provides no identification numbers or amounts charged in individual claims for specific tests, supplies, or services. It does not identify or describe the individuals involved in the improper billing or allege with particularity any certification of compliance with federal regulations in order to obtain payments."[21] Thus, although the First Circuit cites *Clausen* and formulates its own strict standard, the facts before it did not require the court to reach the question of whether all complaints alleging a False Claims Act presentment claim must include details of specific bills.

The Tenth Circuit, also citing *Clausen*, and quoting the First Circuit's standard, has similarly held that a relator's complaint against a health insurance company for submitting false claims to the Health Care Financing Authority lacked the requisite particularity because it failed to allege "the specifics of any actual claims submitted."[22] Unfortunately, we cannot determine from the facts in that case whether the complaint at issue set forth any indicia that claims were submitted. If so, this would make the demand for billing detail much like the strict requirement of *Clausen*, but as it stands we cannot be sure.

---

[20] *Karvelas*, 360 F.3d at 232–33.

[21] *Id.* at 233.

[22] *Sikkenga*, 472 F.3d at 727–28.

While the First and Tenth circuits have relied, to a somewhat unclear degree, on *Clausen*, at the same time the Eleventh Circuit itself has moved away from *Clausen*'s most exacting language, accepting less billing detail in a case where particular allegations of a scheme offered indicia of reliability that bills were presented. In *U.S. ex rel. Walker v. R&F Properties of Lake County, Inc.*, the Eleventh Circuit held that a False Claims Act complaint met the requisite particularity based on a nurse's allegations that she "*believed* [the hospital] submitted false or fraudulent claims" by billing nurses' services as if performed by a doctor.[23] The nurse did not come forward with any details of the contents of actually submitted claims, alleging only the scheme that, according to an office administrator, nurse and doctor services were billed identically. Although the court did not say as much, in the face of strong evidence of a billing scheme in which it was likely, as opposed to speculative, that fraudulent bills were actually submitted, the court found relatively skimpy details about the bills to be sufficient.

While this Court has also addressed the sufficiency of False Claims Act complaints, we are yet to confront squarely with what particularity a complaint must plead the actual details of the false claim itself. It is true that we have said "statements or claims are among the circumstances constituting fraud in a False Claims Act suit, [and] these must be plead with particularity,"[24] but this statement only recited Rule 9(b)'s requirement that the circumstances of fraud be pled with particularity; it did not speak to the detail required. We now consider that question as presented by this case and do so for sections 3729(a)(1-3) separately and in turn.

---

[23] 433 F.3d 1349, 1360 (11th Cir. 2005) (emphasis added).

[24] *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999).

IV

A

Dr. Grubbs' complaint first alleges violations of § 3729(a)(1), which makes liable any person who "knowingly presents, or causes to be presented" a false claim to the Government. This provision includes an express presentment requirement. As the Eleventh Circuit describes it, the provision's *sine qua non* is the presentment of a false claim. Other elements include that the claim was false or fraudulent and that the action was undertaken knowingly. Notably, stating a claim under § 3729(a)(1) does not require actual or specific damages, as the statute imposes a liquidated civil penalty on violators.

We have traditionally required that a fraud complaint include "the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby."[25] However, we have acknowledged that "Rule 9(b)'s ultimate meaning is context-specific,"[26] and thus there is no single construction of Rule 9(b) that applies in all contexts. Depending on the claim, a plaintiff may sufficiently "state with particularity the circumstances constituting fraud or mistake" without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand.

The "time, place, contents, and identity" standard originated in common law fraud and securities fraud cases making it no surprise that the elements of those claims match the pleading standard's requirements. The elements of common law fraud are "1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and

---

[25] *Id.*

[26] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."[27] Given the elements of reliance and damages, pleading common law fraud with particularity demands the specifics of the false representation—without the precise contents of the misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment. In other words, common law fraud's elements of reliance and damages are intertwined with the misrepresentation and heighten the need for attention to the misrepresentation itself .

The False Claims Act, in contrast, lacks the elements of reliance and damages. Rather, it *protects* the Treasury from monetary injury. Put plainly, the statute is remedial and exposes even unsuccessful false claims to liability.[28] A person that presented fraudulent claims that were never paid remains liable for the Act's civil penalty. It is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege that the Government relied on or was damaged by the false claim. Thus, a claim under the False Claims Act and a claim under common law or securities fraud are not on the same plane in meeting the requirement of "stat[ing] with particularity" the contents of the fraudulent misrepresentation.

---

[27] *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (interpreting Texas law).

[28] The Eleventh Circuit's statement that without presentment "there is simply no actionable damage to the public fisc as required under the False Claims Act," *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002), is incorrect to the extent that it is not limited to section (a)(1) and adds a damages element to the False Claims Act, requiring payment in addition to presentment. The statute offers a civil penalty for proof of fraudulent claims whether or not paid.

And surely a procedural rule ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial.[29] The False Claims Act is a civil provision and under section (a)(1) a plaintiff must prove presentment by a preponderance of the evidence.[30] Fraudulent presentment requires proof only of the claim's falsity, not of its exact contents. If at trial a *qui tam* plaintiff proves the existence of a billing scheme and offers particular and reliable indicia that false bills were actually submitted as a result of the scheme—such as dates that services were fraudulently provided or recorded, by whom, and evidence of the department's standard billing procedure[31]—a reasonable jury could infer that more likely than not the defendant presented a false bill to the government, this despite no evidence of the particular contents of the misrepresentation. Of course, the exact dollar amounts fraudulently billed will often surface through discovery and will in most cases be necessary to sufficiently prove actual damages above the Act's civil penalty. Nevertheless, a plaintiff does not

[29] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, --- (2007) ("We emphasize, as well, that under our construction of the 'strong inference' standard, a plaintiff is not forced to plead more than she would be required to prove at trial. A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference. At trial, she must then prove her case by a 'preponderance of the evidence.' Stated otherwise, she must demonstrate that it is *more likely* than not that the defendant acted with scienter."). Although we refrain from delving into the quagmire, a pleading rule that requires the complaint to state more facts than necessary to prove elements of a cause of action to a preponderance at trial summons Seventh Amendment concerns.

[30] *See UMC Electronics Co. v. U.S.*, 249 F.3d 1337, 1338 (Fed. Cir. 2001).

[31] The magistrate's report also faults the complaint for not identifying the person who actually submitted the bills. Whether a doctor put the claims in motion by entering records of unprovided or unnecessary services into the hospital's standard billing system, or whether the doctor actually hit the "send" button that presents the bills to the Government, does not change the nature of the fraud. The False Claims Act recognizes this and requires only that a person knowingly "causes [a claim] to be presented." *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004). The doctor can cause the fraud by putting a fraudulent record into a system that he knows will ministerially crank out a fraudulent bill to the Government. Describing such a system serves the same purpose for pleading as naming the individual who hit the submit button.

necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted. To require these details at pleading is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates.[32]

Appellees retort that because presentment is the conduct that gives rise to § 3729(a)(1) liability, Rule 9(b) demands that it is the contents of the presented bill itself that must be pled with particular detail and not inferred from the circumstances. We must disagree with the sweep of that assertion. Stating "with particularity the circumstances constituting fraud" does not necessarily and always mean stating the contents of a bill. The particular circumstances constituting the fraudulent presentment are often harbored in the scheme. A hand in the cookie jar does not itself amount to fraud separate from the fib that the treat has been earned when in fact the chores remain undone. Standing alone, raw bills—even with numbers, dates, and amounts—are not fraud without an underlying scheme to submit the bills for unperformed or unnecessary work. It is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated through the presentment of false bills.

In sum, the "time, place, contents, and identity" standard is not a straitjacket for Rule 9(b). Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim Act. We reach for a workable construction of Rule 9(b) with complaints under the False Claims Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the

---

[32] *See U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 258, 269 (D.D.C. 2002) (agreeing with the dissent in *Clausen* that the *Clausen* majority was "seeking not particularity but proof.").

circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

### B

This standard comports with Rule 9(b)'s objectives of ensuring the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs."[33] Ultimately, the question is what is required for a ticket to the federal discovery apparatus.

Confronting False Claims Act defendants with both an alleged scheme to submit false claims and details leading to a strong inference that those claims were submitted—such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into—gives defendants adequate notice of the claims. In many cases, the defendants will be in possession of the most relevant records, such as patients' charts, doctors' notes, and internal billing records, with which to defend on the grounds that alleged falsely-recorded services were not recorded, were not billed for, or were actually provided.[34]

Rule 9(b) also prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a "fishing expedition." A complaint that includes both

---

[33] *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994).

[34] Appellee Dr. Desai argues that some patient visits may not be in the doctors' records because regulations allow a psychiatrists to keep notes separate from a patient's charts. The applicable regulation belies Dr. Desai's argument. "Psychotherapy notes excludes . . . counseling session start and stop times." 45 C.F.R. § 164.501.

particular details of a scheme to present fraudulent bills to the Government and allegations making it likely bills were actually submitted limits any "fishing" to a small pond that is either stocked or dead. Defendants either have or do not have evidence that the alleged phony services were actually provided; they either have or do not have evidence that recorded, but unprovided or unnecessary, services did not result in bills to the Government. Discovery can be pointed and efficient, with a summary judgment following on the heels of the complaint if billing records discredit the complaint's particularized allegations. That is the balance Rule 9(b) attempts to strike. And it works best when access to discovery does not inevitably include all discovery's powers but is tailored by the district court to the case at hand. And the detail must be sufficient to allow this tailoring. Rule 9(b) should not be made to shoulder all the burden of policing abusive discovery. Its balance draws upon the vigilant hand of the district court judge.

The First Circuit points to the Government intervention provision in the Act as a reason to enhance protection against unfocused discovery.[35] It reasons that absent details in the complaint about fraudulent bills submitted by defendants, the Government would have to decide whether to intervene on incomplete information. The First Circuit acknowledged that the Government could intervene after discovery, but argued that by then the Government would have lost its opportunity to conduct a confidential investigation on its own time line. Even considering the importance of the Government's ability to intervene, as it is the true party at interest in *qui tam* actions, we see this is a strained rationale for overly strict pleading. It discourages whistleblowers who may have significant information from coming forward with what they know in order to protect the Government's ability to intervene on perfect data. Such a rule would

---

[35] *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 230–31 (1st Cir. 2004).

sweep too far. While Rule 9(b) stands as a hurdle preventing discovery when a complaint fails to sufficiently define its claims, it does not do away with discovery altogether by allowing access to discovery only when the complaint already contains all the information necessary to succeed at trial.

C

Grubbs' complaint satisfies Rule 9(b) on its § 3729(a)(1) claim as to the individual doctors. The complaint sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud. Grubbs describes in detail, including the date, place, and participants, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot. He alleges his first-hand experience of the scheme unfolding as it related to him, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred. Also alleged are specific dates that each doctor falsely claimed to have provided services to patients and often the type of medical service or its Current Procedural Terminology code that would have been used in the bill.

Taking the allegations of the scheme and the relator's own alleged experience as true, as we must on a motion to dismiss, and considering the complaint's list of dates that specified, unprovided services were recorded amounts to more than probable, nigh likely, circumstantial evidence that the doctors' fraudulent records caused the hospital's billing system in due course to present fraudulent claims to the Government. It would stretch the imagination to infer the inverse; that the defendant doctors go through the charade of meeting with newly hired doctors to describe their fraudulent practice and that they continually record unprovided services only for the scheme to deviate from the regular billing track at the last moment so that the recorded, but unprovided, services never get billed. That fraudulent bills were presented to

the Government is the logical conclusion of the particular allegations in Grubbs' complaint even though it does not include exact billing numbers or amounts.

D

Regarding the Hospital, however, the complaint fails because there is no indication that the Hospital itself acted with the requisite intent. Under all sections of the False Claims Act, the defendant must act with the purpose of getting a false claim paid by the Government. Grubbs did not plead, argue at the district court, or on appeal that the Hospital was vicariously liable for the actions of the doctors or nurses. Without an attributed liability theory, no allegations in the complaint allow a reasonable inference that the Hospital had the requisite intent. The Hospital may have been inadvertently and in the normal course of business processing the claims of services fraudulently exaggerated by its doctors. We have no basis for inferring otherwise.

However, in light of the survival of the (a)(1) claims against the individual doctors, in fairness Dr. Grubbs should be granted leave to amend his complaint regarding his (a)(1) claims against the Hospital.[36]

V

We now turn to § 3729(a)(2), which imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." The district court dismissed Grubbs' (a)(2) claims for the same reason it dismissed the (a)(1) claims; the complaint failed to allege details of fraudulent bills actually presented to the Government. This was error. As the Supreme Court recently settled: "[T]he concept of presentment is not mentioned

---

[36] *See Foman v. Davis*, 371 U.S. 178, 181–82 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). The district court has the discretion to refuse leave to file amendments after any amendment filed on remand.

in § 3729(a)(2). The inclusion of an express presentment requirement in subsection (a)(1), combined with the absence of anything similar in subsection (a)(2), suggests that Congress did not intend to include a presentment requirement in subsection (a)(2)."[37]

What § 3729(a)(2) requires is that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government. For this section, the recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute; we need not make the step of inferring that the record actually caused a claim to be presented to the Government. Grubbs' complaint particularly alleges that at the February 5 dinner, Drs. Groves and Kanneganti explained how they meet with the nursing staff and "write notes" about patients that they only see on an as needed basis but bill as daily face-to-face visits. He also alleges that two days later the nursing staff "attempted to assist him in recording information as physician visits even before and without his actually personally seeing the patients." Similarly, the complaint alleges that "[o]n December 4 and 5, 2004, Dr. Bagri recorded false progress notes in The Hospital medical records for hospital visits with a patient, but the visits did not actually occur." These are simple, concise, and particular allegations of the circumstances constituting § 3729(a)(2) fraud and these claims against Drs. Groves, Kanneganti, and Bagri should not have been dismissed at the pleading stage.

VI

Grubbs also alleges violations of the False Claims Act's conspiracy provision. Section 3729(a)(3) subjects to civil liability any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." We have held that to prove a False Claims Act conspiracy, a relator must

---

[37] *Allison Engine, Co. v. U.S. ex rel. Sanders*, 128 S.Ct. 2123, 2129 (2008).

show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement."[38] The particularity requirements of Rule 9(b) apply to the False Claims Act's conspiracy provision with equal force as to its "presentment" and "record" provisions. As the D.C. Circuit has stated, a plaintiff alleging a conspiracy to commit fraud must "plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy."[39]

To the extent that the district court dismissed the (a)(3) claim because the complaint did not sufficiently plead a specific instance of a presented claim, the district court erred. As in § 3729(a)(2), the conspiracy provision lacks a presentment element, thus presentment of a false claim need not be proven nor pled to prevail on a False Claims Act conspiracy charge.

The district court also reasoned that the complaint fell short of pleading an agreement. We disagree as to Drs. Groves and Kanneganti, the two doctors that arranged the Pappadeaux's meeting, but agree as to the other defendants. The complaint attributes specific language to Drs. Groves and Kanneganti that occurred at the Pappadeaux's meeting and which indicates, or at least from which a reasonable jury could infer,[40] that they were in agreement between themselves and some members of the nursing staff to improperly record unprovided services for the purpose of getting fraudulent claims paid by the Government. The temporal circumstances of the meeting also suggest a

---

[38] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).

[39] *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C.Cir. 2008). The court's analysis was couched as jurisdictional, but the statement holds true as a purely procedural pleading requirement.

[40] *See Farmer*, 523 F.3d at 344. While *Farmer* asked whether a "reasonable jury could infer" on review of a summary judgment, the standard on review of a motion to dismiss cannot be more exacting.

conspiratorial design. Two days prior to Dr. Grubbs' first weekend on call these doctors invited him to a dinner at which they described how they used the weekend on calls to perpetrate the alleged fraudulent scheme. To infer that the two doctors were in agreement is not conclusory or speculative, but naturally inferred from the allegations.

It does, however, stretch deduction to conclude that the remaining defendant doctors and the Hospital were also in on the agreement. Even taking the allegations as true—that various doctors over a period of years each submitted certain false claims—does not, by itself, do more than point to a possibility of an agreement among them.

Regarding Drs. Groves and Kanneganti, the two doctors for which we hold the complaint adequately alleges an agreement, Grubbs provides particular circumstances of the required overt acts by describing his exchange with the nursing staff two days after the meeting. The nurses, although not defendants, were aware of a practice here alleged to have been an agreement to cheat the government and are asserted to have offered to assist Grubbs in recording their conference as face-to-face visits with patients. Another separate overt act, subsequent to the meeting, was alleged regarding Dr. Kanneganti specifically. The complaint avers that he billed Medicaid "for a psychiatric diagnostic exam on October 12, 2004, CPT Code #90801," even though "[t]he Hospital medical records indicate that the psychiatric exam of the patient was conducted by a nurse." Accordingly, the district court erred in dismissing the conspiracy claim as to defendants Groves and Kanneganti.

## VII

Lastly, we address the district court's finding that Grubbs' complaint failed for want of independently obtained knowledge of the alleged fraud. This requirement is misplaced. A relator must have direct and independent knowledge on which the allegations are based when the action is "based upon the

public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [General] Accounting Office report, hearing, audit, or investigation, or from the news media."[41] In other words, the original-source independent-knowledge requirement is only triggered if the claims are based on information that is publicly disclosed.[42]

Grubbs' complaint is not based upon publicly disclosed allegations. Prior to Grubbs' complaint, there were no court or administrative proceedings regarding the alleged fraud at the Hospital, nor were there Government reports or audits containing information on which Grubbs' allegations are based. Grubbs' complaint, if true, exposed a previously-uncovered fraud being perpetrated on the Government; at least on the state of the present record it is not a parasitic suit by an opportunistic late-comer.[43]

Appellees, pointing to *Reagan*, argue that any citizen could have used the Freedom of Information Act to obtain billing information on which Grubbs' action is partly based. In *Reagan*, we held that an FOIA request constitutes a public disclosure, as it is an "administrative . . . report," an enumerated public disclosure under the statute.[44] We found that we lacked jurisdiction because the relator had made and received an FOIA report prior to filing her complaint that "substantiated the allegations she made in . . . her current claims under the

---

[41] 31 U.S.C. § 3730(e)(4)(A–B).

[42] *See U.S. ex rel. Joseph Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 441–42 (5th Cir. 2008)*; U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) ("Under 31 U.S.C. § 3730(e)(4), we first ask 'whether there has been a public disclosure of allegations or transactions.'") (internal quotation marks omitted).

[43] *See Reagan*, 384 F.3d at 174.

[44] *Id.* at 175–76.

FCA."[45]  Here, in contrast, no FOIA request had been made and no administrative report was in existence relating to the allegations in the complaint at the time it was filed.  Additionally, we doubt whether medical billing information that comprises the crux of the complaint in this case would be available through the FOIA, which excludes "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[46]  On the showing to date, the complaint does not include publicly-disclosed information and thus whether Grubbs was an original source bearing direct and independently obtained knowledge remains undecided.

We emphasize that we decide only that the allegations are sufficient to gain Dr. Grubbs access to the discovery process.  We leave to the able district court to manage this access—discovery targeted to the claims alleged, avoiding a search for new claims.

We REVERSE and REMAND the dismissal of Grubbs' § 3729(a)(1) claims, except as to the Hospital which we AFFIRM without prejudice, granting Grubbs leave to amend his complaint.  We REVERSE and REMAND the dismissal of Grubbs' § 3729(a)(2) claims as to defendants Groves, Kanneganti, and Bagri and AFFIRM as to the other defendants.  We REVERSE and REMAND the dismissal of Grubbs' § 3729(a)(3) conspiracy claims as to defendants Groves and Kanneganti and AFFIRM as to the other defendants.  AFFIRMED in part, REVERSED and REMANDED in part.

---

[45] *Id.* at 176.

[46] 5 U.S.C. § 552(b)(6).