MEMORANDUM **
Charles Jajdelski alleges that his former employer, a for-profit college owned by Kaplan, violated the False Claims Act, 81 U.S.C. §§ 3729-8733, by submitting financial aid claims to the U.S. Department of Education for students not genuinely in attendance and by making false representations to secure re-accreditation.
Kaplan filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), which the district court granted with prejudice. We affirm on the accreditation claim but reverse and remand on the claim based upon student enrollment.
I
A
1
Jajdelski was an Admissions Representative with experience doing the same job at another Kaplan-owned college. Compl. ¶ 7-8. He attended an October 25, 2003 Heritage graduation ceremony at which five boxes of diplomas were never distributed. Compl. ¶ 9. Suspicious about the widespread student absences, he made inquires with a Department Chairperson who first secured an assurance from Jaj-delski that he could be trusted, and then who brought the Director of Education into the conversation “to tell [him] what was going on at Kaplan Heritage College.” Compl. ¶ 11. The Director explained that the unused diplomas were for enrolled students who had either never begun, or had never completed, the curriculum. Compl. ¶ 12. When Jajdelski asked why Heritage would generate diplomas for such students, she replied that “instructors were required to keep the students enrolled in the programs on their attendance sheets for the duration of the program.” Compl. ¶ 13.
As illustrations of this phenomenon, Jaj-delski alleges (i) being given a memorandum about a specific student who had attended the college for four months and had withdrawn but who nonetheless “was graduated” and (ii) being instructed, without explanation, to stop his practice of personally verifying student enrollment. Compl. ¶ ¶ 64, 47. He further details being warned on December 2, 2003 by the College Director to “[k]eep [his] nose out of where it doesn’t belong regarding students who did or did not graduate and the financial aid status of those students.” Compl. ¶ 72. Jajdelski was told that if he were caught speaking to the Financial Aid Director again, his job would be in jeopardy. Id. Ten days later, he was fired.
2
Jajdelski also alleges that after the seventh day of any program offering, the College Director would meet with the Director of Financial Aid and each Admissions Representative. Compl. ¶ 46. The question of how many “students enrolled *536 were ‘fully packaged’ ” would be posed; as explained to Jajdelski, that terminology meant that the College’s “financial aid request submitted to the federal government for Title IV funds and the associated funds received could now be drawn down for Kaplan’s use.” Id. He also alleges that various federal aid programs were available to Heritage. Compl. ¶ 40. Prospective students could not even receive a campus tour until they successfully completed an application for financial aid. Compl. ¶ 43-44.
B
In dismissing his complaint the district court faulted Jajdelski for not identifying which false claims were submitted and when. Our court, though, has rejected that a qui tarn relator must “identify representative examples of false claims” for his allegations. Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir.2010). Instead, aligning with the Fifth Circuit’s approach, we held “that it is sufficient to allege ‘particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.’ ” Id. at 998-99 (quoting United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir.2009)). That standard is met here because Jajdelski “alleges his first-hand experience of the scheme unfolding” and “describes in detail, including the date, place, and participants,” meetings during which the phantom student scheme was revealed. Grubbs, 565 F.3d at 191-92. It would “stretch the imagination” to believe that Kaplan employees fastidiously (and secretively) documented fake student enrollment statistics and met about them once the threshold for financial aid eligibility was crossed, “only for the scheme to deviate ... at the last moment” such that they did not submit those claims to the Department of Education. Id. at 192.
Thus, dismissal of this claim was error.
II
Exercising our authority to affirm on any basis, we conclude that all of Jajdelski’s other allegations were properly dismissed. See United States v. Washington, 573 F.3d 701, 706 (9th Cir.2009). They are barred by the False Claims Act’s six-year statute of limitations, 31 U.S.C. § 3731(b)(1), as they necessarily concern conduct that occurred on or before December 12, 2003, the day Kaplan fired Jajdel-ski, and Jajdelski did not assert them until his fourth amended complaint in June 2010. Jajdelski argues that relation back salvages them, yet these allegations do not qualify for that doctrine because they do not arise “out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading.” Fed.R.Civ.P. 15(c)(1)(B).
We need not reach Jajdelski’s argument that he ought to have been granted leave to amend, as that would not cure the timeliness defect. See Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir.2004).
AFFIRMED IN PART AND REVERSED IN PART. The parties shall bear their own costs.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.