CAVANAGH, J.
(concurring only in the result). Underlying all of plaintiffs’ claims in this consolidated appeal is the allegation that defendants violated MCL 333.17755(2) by failing to “pass on the savings in cost” when dispensing generic drugs. I agree with the majority that § 17755(2) could not be clearer that the phrase “savings in cost” means “the difference between the wholesale cost to the pharmacist of the 2 drug products.” Further, as the majority explains, a pharmacy’s obligation under § 17755(2) to pass on the savings in cost only applies to a transaction in which the pharmacy substitutes, i.e., replaces, a prescribed brand-name drug with a generic drug. However, unlike the majority, I would look no further than the fact that plaintiffs did not specifically allege a single occurrence in which defendants dispensed a generic drug as a replacement for a prescribed brand-name drug to hold that plaintiffs did not meet the heightened pleading standard of MCR 2.112(B)(1). Accordingly, I concur only in the majority’s result reinstating the trial court’s grant of summary disposition to defendants.
*69 I. HEIGHTENED PLEADING STANDARD UNDER MCR 2.112(B)(1)
It is well established that “fraud is not to be lightly presumed, but must be clearly proved.” Palmer v Palmer, 194 Mich 79, 81; 160 NW 404 (1916). Memorializing this standard, MCR 2.112(B)(1) states that “[i]n allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity.” See Lawrence M Clarke, Inc v Richco Constr, Inc, 489 Mich 265, 283-284; 803 NW2d 151 (2011) (applying MCR 2.112(B)(1) to a common-law-fraud claim). In this case, plaintiffs argue that defendants’ alleged failures to pass on the savings in cost under § 17755(2) constitute false claims for healthcare or Medicaid benefits under the Medicaid False Claim Act (MFCA), MCL 400.601 et seq., and the Health Care False Claim Act (HCFCA), MCL 752.1001 et seq.[1] Specifically, plaintiffs assert that defendants have received overpayments to which they *70 are not entitled from purchasers, third-party payment sources, and the state by knowingly violating § 17755(2) and that plaintiffs must be reimbursed in full for every dispensation of a generic drug within the limitations period applicable to their lawsuits. Accordingly, the heightened pleading standard applies because plaintiffs’ claims sound in fraud.[2]
Generally, when applying the federal heightened pleading standard to claims brought under the federal False Claims Act, 31 USC 3729 et seq., federal courts have developed the guideline that plaintiffs must allege “with particularity the who, what, when, where, and how of the alleged fraud.” United States ex rel Ge v Takeda Pharm Co Ltd, 737 F3d 116, 123 (CA 1, 2013) (citations and quotation marks omitted).[3] Importantly, plaintiffs’ qui tarn and class action lawsuits allege fraudulent schemes that involve numerous potential violations of the HCFCA and the MFCA over a long period of time. In light of these circumstances, the *71 application of MCR 2.112(B)(1) must remain flexible so that it is measured within the context of the specific claims alleged. See Utah v Apotex Corp, 2012 Utah 36, ¶ 27; 282 P3d 66 (2012). See, also, id. (explaining that the particularity requirement is “ ‘not a straitjacket’ ” for pleading fraud claims), quoting United States ex rel Grubbs v Kanneganti, 565 F3d 180, 190 (CA 5, 2009).
For example, the “heightened pleading standard may be applied less stringently when the specific factual information is peculiarly within the defendant’s knowledge or control.” Apotex, 2012 Utah at ¶ 27 (citation and quotation marks omitted). Also, “where the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct.” Id. (citation and quotation marks omitted). See, also, United States ex rel Joshi v St Luke’s Hosp, Inc, 441 F3d 552, 557 (CA 8, 2006) (explaining that the plaintiff was not required “to allege specific details of every alleged fraudulent claim,” but the complaint “must provide some representative examples of [the defendants’] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors”).[4]
Finally, in determining whether a plaintiffs claim under the HCFCA or the MFCA has been pleaded with sufficient particularity, a court should not lose sight of the fact that although one aim of the court rule “is to discourage nuisance suits and frivolous accusations,” *72 United States ex rel Pogue v Diabetes Treatment Ctrs of America, Inc, 238 F Supp 2d 258, 269 (D DC, 2002), the purpose of the heightened pleading standard is “to alert defendants ‘as to the particulars of their alleged misconduct’ so that they may respond,” Chesbrough v VPA, PC, 655 F3d 461, 466 (CA 6, 2011), quoting United States ex rel Bledsoe v Community Health Sys, Inc, 501 F3d 493, 503 (CA 6, 2007).
II. ANALYSIS OF PLAINTIFFS’ COMPLAINTS
As previously mentioned, a pharmacy’s obligation under § 17755(2) is not implicated whenever a generic drug is dispensed, even though a pharmacy may, generally speaking, incur greater profit when generic drugs are dispensed than when brand-name drugs are dispensed. Instead, a pharmacy is obligated to “pass on the savings in cost” only if, in a given transaction, the pharmacy dispenses a generic drug in substitution for a brand-name drug that had been prescribed. Thus, a substitution transaction is a necessary component of a violation of § 17755(2), which becomes an essential element to plaintiffs’ claims under the HCFCA and the MFCA because they are predicated on alleged violations of § 17755(2). Applying the aforementioned heightened pleading standard under MCR 2.112(B)(1), plaintiffs have not met the particularity requirement because their complaints do not allege a single, let alone “representative examples,” Joshi, 441 F3d at 557, of instances in which defendants failed to pass on the savings in cost for a substitution transaction.
Instead of pleading substitution transactions in their complaints, plaintiffs simply list series of transactions in 2008 that represent alleged occasions when defendants merely dispensed generic drugs, with no indication of whether the dispensed generics resulted from *73 the pharmacies’ replacement of a brand-name drug with a generic drug.* ***[5] Requiring plaintiffs to identify the alleged transactions that specifically violate § 17755(2) is necessary to give sufficient notice to defendants of the particular transactions they are to defend against. See Chesbrough, 655 F3d at 466. Furthermore, under the circumstances of this case, this requirement does not create an insurmountable burden. As the majority notes, whether some plaintiffs received a generic drug in replacement for a previously prescribed brand-name drug is information that at least the plaintiffs who are uninsured buyers would have access to.[6] See Spelman v Addison, 300 Mich 690, 702; 2 NW2d 883 (1942) (“In determining the sufficiency of a bill of complaint, consideration should be given to the character of the *74 plaintiffs alleged cause of action and to such circumstances as whether the records and knowledge of the facts on which the plaintiff relies are in his possession or largely, if not exclusively, in the possession of defendant.”); Apotex, 2012 Utah at ¶ 27.
Given that plaintiffs did not specifically identify in their complaints a single transaction that, if assumed true, would constitute a violation of § 17755(2), they have failed to meet the heightened particularity standard for pleading fraud claims, and, thus, summary disposition in favor of defendants under MCR 2.116(C)(8) is proper. See Spiek v Dep’t of Transp, 456 Mich 331, 339; 572 NW2d 201 (1998) (holding that summary disposition under MCR 2.116(C)(8) was appropriate when “[t]aking all plaintiffs’ factual allegations as true, the complaint fails to allege an essential element of their cause of action”).[7] Accordingly, I concur only in the majority’s result reinstating the trial court’s grant of summary disposition to defendants.

 The HCFCA states:
A person who receives a health care benefit or payment from a health care corporation or health care insurer which the person knows that he or she is not entitled to receive or he paid; or a person who knowingly presents or causes to be presented a claim which contains a false statement, shall be liable to the health care corporation or health care insurer for the full amount of the benefit or payment made. [MCL 752.1009.]
Similarly, the MFCA states:
A person who receives a benefit that the person is not entitled to receive by reason of fraud or making a fraudulent statement or knowingly concealing a material fact, or who engages in any conduct prohibited by this statute, shall forfeit and pay to the state the full amount received, and for each claim a civil penalty of not less than $5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by the state as a result of the conduct by the person. [MCL 400.612(1).]
The HCFA and the MFCA also define “knowingly.” See MCL 752.1002(h); MCL 400.602(f).

 This conclusion is consistent with the approach taken by other states and federal courts that have addressed state and federal false claims acts. See California ex rel McCann v Bank of America, NA, 191 Cal App 4th 897, 906; 120 Cal Rptr 3d 204 (2011) (“ ‘As in any action sounding in fraud, the allegations of a [California False Claims Act] complaint must be pleaded with particularity.’ ”) (citations omitted); Utah v Apotex Corp, 2012 Utah 36, ¶ 23 & n 4; 282 P3d 66 (2012) (stating that “[e]very federal circuit court to consider the issue has concluded that claims brought under the federal False Claims Act (FCA) must be pled with particularity under rule 9(b) of the Federal Rules of Civil Procedure”).

 See, also, Chesbrough v VPA, PC, 655 F3d 461, 467 (CA 6, 2011) (stating that claims must assert “ ‘(1) the time, place, and content of the alleged misrepresentation,’ (2) ‘the fraudulent scheme,’ (3) the defendant’s fraudulent intent, and (4) the resulting injury”) (citations omitted). Although “Michigan courts are not bound by” federal courts’ interpretations of the federal court rules, when the Michigan Court Rules “are nearly identical to the federal requirements, we find it reasonable to conclude that similar purposes, goals, and cautions are applicable to both.” Henry v Dow Chem Co, 484 Mich 483, 499; 772 NW2d 301 (2009); compare MCR 2.112(B)(1) with FR Civ P 9(b).

 Furthermore, “a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted” because “requir[ing] these details at pleading is one small step shy of requiring production of actual documentation with the complaint. . . Grubbs, 565 F3d at 190.

 The following excerpt from the second amended complaint in Docket No. 146791, the qui tarn action, illustrates the nature of plaintiffs’ allegations as they relate to the specific transactions pleaded:
Rather than alleging out of the millions of prescriptions drug transactions with Defendants each of the transactions that violated the Michigan generic drug pricing laws and the Medicaid False Claims Act, Plaintiff alleges . . . specific information about Medicaid claims submitted by Defendants for . .. five generic drugs during the fourth quarter of 2008 as examples of Medicaid claims by Defendants that violated Michigan law. These examples are not exhaustive of those purchases for which Defendants failed to pass on to the State of Michigan the difference between the acquisition cost of the generic drug and brand-name drug as required by Michigan law. [Emphasis omitted.]
The class-action plaintiffs’ complaints include nearly identical language demonstrating the gravamen of all plaintiffs’ allegations.

 According to the trial court, plaintiff Marcia Gurganus “eoncede[d] that she has no way of knowing whether the prescription was written using the brand-name or generic . . ..” However, for the purposes of her qui tarn action, that fact does not relieve Gurganus of her pleading burden; rather, her lack of knowledge regarding the nature of the transactions between defendant pharmacies and the state serves to question her ability to bring a qui tarn action under MCL 400.610a(13) as “the original source of the information.”

 Like the majority, I do not find it necessary to opine on the merits of the class-action plaintiffs’ claim that § 17755(2) was intended as an implied cause of action. However, assuming arguendo that such a cause of action exists, the claims would be based on a statutory violation that is not necessarily fraudulent in nature, and, thus, the heightened pleading standard under MCR 2.112(B)(1) might not apply. Nevertheless, summary disposition in favor of defendants would be appropriate because plaintiffs’ complaints are void of a bare allegation pertaining to the critical requirement for their possible claim under § 17755(2), i.e., the complaints failed to include a mere statement that defendants failed to pass on the savings in cost with respect to a substitution transaction. Instead, plaintiffs’ theory of liability would essentially impose on defendants the obligation to pass on the “full cost savings realized by the pharmacies’ lower acquisition cost of the generic drug” “obtained by the pharmacies in dispensing a generically equivalent drug product. ...” Therefore, “the legal sufficiency of the claim on the pleadings alone .. . determinéis]” that plaintiffs have not “stated a claim on which relief may be granted.” Spiek, 456 Mich at 337.