United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 15, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30137

_____

HAWTHORNE LAND COMPANY; HUGH A. HAWTHORNE FAMILY CLASS TRUST,
BANK ONE TRUST COMPANY, NA,

Plaintiffs-Appellants,

versus

OCCIDENTAL CHEMICAL CORPORATION; ET AL,

Defendants,

OCCIDENTAL CHEMICAL CORPORATION; TEXAS BRINE COMPANY, LLC,
Successor in Interest to Texas Brine Corporation; PAUL LANE,
d/b/a Paul Lane's Construction Company; MARSH BUGGAGE EQUIPMENT
COMPANY; WOODSON CONSTRUCTION COMPANY; TASSIN INTERNATIONAL
LIMITED,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana

_____

Before REAVLEY, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:

Plaintiffs appeal orders of the district court denying remand and joinder of a party and an order granting summary judgment for defendants. We affirm.

I

In 1965, Hugh Hawthorne purchased a tract of land in St. James Parish, Louisiana. Soon after buying the land, Hawthorne conveyed a servitude to defendant Texas Brine so that it could construct, operate, and maintain a pipeline (called the Oxy-Taft pipeline) on the property. The pipeline is currently operated by Texas Brine and owned by defendant Occidental pursuant to an operating agreement between the two. It is used to transport highly concentrated sodium chloride solution, or brine.

Through various transactions in 1986 and 1987, Hawthorne Land Company ("Hawthorne Land"), Hawthorne Trust (Bank One Trust Company as trustee), and Nire, Inc. acquired ownership in the land, with Nire owning a 5% undivided interest. From 1985 to 1987, the pipeline experienced seven leaks on the property which resulted in the discharge of significant amounts of brine. Occidental hired independent contractors to weld repairs for some of the leaks. Some of the welds were allegedly performed improperly and the leaks continued.

A subsequent site assessment by the plaintiffs' experts showed that the brine had migrated both vertically and horizontally through the ground water, requiring extensive remediation. The pipeline was replaced in 1988.

In February of 2001, plaintiff Hawthorne Land, a Louisiana corporation, sued eight defendants in state court under tort and contract theories for property damage arising from the leaks. When the suit was filed, six of the eight original defendants

2

were Louisiana citizens.  Occidental and Texas Brine (the two non-Louisiana defendants) timely removed to federal court, claiming diversity jurisdiction existed because the non-diverse defendants were improperly joined.  They also alleged bankruptcy jurisdiction because one defendant, Woodson Construction Company, had filed for bankruptcy.  They answered the complaint with various defenses, including the failure of Hawthorne Land to join all co-owners of its property as plaintiffs.

Hawthorne Land dismissed the alleged bankrupt defendant, filed a motion for leave to amend its complaint to join co-owner Hawthorne Trust as co-plaintiff, and filed a motion to remand. The court granted leave to Hawthorne Land to amend its complaint. Both Occidental and Texas Brine filed oppositions to the motion to remand, and the motion was denied.

Almost a year later, plaintiffs moved to join Nire, Inc., the third co-owner of the land, as a defendant.  The district court denied the motion, noting that Nire had recently settled its potential claims with defendants.  Plaintiffs moved to join Nire as a defendant, which the district court denied for the same reasons as its denial of the first motion to join Nire.

After extensive discovery, defendants filed a motion for summary judgment on the basis of prescription, and the motion was granted.

## II

Plaintiffs first contend that the district court erred in

3

refusing to remand the case to state court. They argue that two of the in-state defendants - the welders Cain's Hydrostatic Tester, Inc. ("Cain's") and Diamond Fabricators, Inc. ("Diamond") - were properly joined because they performed inadequate welds on the pipeline which later leaked, exposing them to liability. We review the denial of the motion to remand *de novo*.[1]

Joinder is improper if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant," so that a plaintiff must be able to survive a hypothetical Rule 12(b)(6) challenge to the claim to effect remand.[2] The summary inquiry into facts "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[3] Plaintiffs cannot survive such a challenge here.

First, plaintiffs' petition does not state that Cain's and Diamond were welders; it states, improperly, that they were excavators. Plaintiffs appear to concede this. Moreover, the paragraph in the petition mentioning Cain's and Diamond states that their actions "did not result in the discharge of [brine]."

---

[1]*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 295 (5th Cir. 1999).

[2]*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

[3]*Id.*

4

Plaintiffs appear to concede this as well.  The petition does not state a claim against Cain's and Diamond.

Second, even if we were to construe the petition liberally to allege negligent welding by Cain's and Diamond, a summary inquiry into the facts reveals that such claims could not survive a motion to dismiss.  As defendants point out, without rebuttal by plaintiffs, there is no documentary connection between Cain's and Diamond and the failed welds.  The petition does not allege any connection, and the defendants convincingly show that the leak reports relied upon by plaintiffs in the motion to remand do not reveal a connection, either.  In addition, the defendants offered the affidavit of Jim Kleinpeter, a plant manager at Texas Brine, which stated that none of the welds by Cain's or Diamond failed; this affidavit may be "selfserving [sic]," as plaintiffs contend, but it is evidence which plaintiffs have not contradicted on even a superficial level.

Because there was no reasonable basis for the district court to predict that plaintiffs could recover against Cain's and Diamond, its denial of the motion to remand was proper.

### III

Plaintiffs next contend that the district court erred in not allowing the joinder of Nire, a co-owner of the land and non-diverse party which, if joined as a defendant, would have destroyed diversity jurisdiction.  We review this conclusion for

5

abuse of discretion.[4]

When Occidental and Texas Brine answered Hawthorne Land's petition, they raised as a defense Hawthorne Land's failure to join all of the co-owners of the land. Plaintiffs claim that Hawthorne Land then contacted both Hawthorne Trust and Nire, but that Nire refused to join as a plaintiff. Hawthorne Land was granted leave to amend its complaint to join co-owner Hawthorne Trust.

Six months later - almost a year after Hawthorne Land filed the petition - plaintiffs filed a second proposed amended complaint, seeking to join Nire as a defendant or involuntary plaintiff[5] and apparently arguing that Nire was a necessary party under Federal Rule of Civil Procedure 19.[6] Plaintiffs stated that during those six months they "exhaust[ed] their efforts to convince Nire to join [the case]." Defendants objected to the second proposed amended complaint because they had settled with Nire for $40,000 not long after the second proposed amended

---

[4]*Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).

[5]It is not clear from the motion whether the Hawthornes wanted Nire joined as an involuntary plaintiff or defendant.

[6] It is not clear from the motion that plaintiffs were arguing necessity under Rule 19 because they never cited the rule. (The actual motion for leave to amend was filed under Rule 15(a)). And it is not clear from the district court's order denying the motion that it considered the plaintiffs to be arguing necessity under Rule 19. But we are persuaded that the Rule 15(a) motion to amend was based on alleged necessity under Rule 19, as the parties assume on appeal, and that the district court considered it as such.

complaint was filed, arguing that joinder was no longer required. The settlement released the defendants from all liability and required Nire to cooperate in the defendants' efforts against plaintiffs. Defendants also argued that, if joinder were required, Nire be joined as a plaintiff. Plaintiffs argued in reply that Nire should be joined as a defendant because it might be liable to them for contribution and its contribution might be larger than the proceeds it received in the settlement. The magistrate judge denied the motion and the district court denied review of that order.

Later, plaintiffs filed a third motion for leave to amend to add as defendants various owners of adjacent land, defendants who would have defeated diversity. Plaintiffs alleged that brine from defendants' pipeline leaked onto the property of these landowners and later migrated to plaintiffs' property. Plaintiffs do not appeal this order.

Finally, plaintiffs filed a fourth motion[7] for leave to amend to add Nire as a defendant. Although the underlying facts were the same as that for the second motion, plaintiffs relied on a new theory - that Nire "aligned" itself with the defendants because the settlement required it to assist the defendants in their case against plaintiffs. Specifically, plaintiffs argued

---

[7]Plaintiffs in their brief do not distinguish between the second and fourth motions, but they are different and entail different analyses.

that the settlement was an unfair attempt to "manipulate" evidence because, after plaintiffs' environmental analysis found excavation necessary, the defendants argued that Louisiana law forbade plaintiffs to excavate without Nire's consent. Plaintiffs argued that, had the lack of Nire's consent caused an inadequate award at trial, they could have held Nire liable under Louisiana law which holds one co-owner liable to the other for damages caused to the common property, including damages from juridical acts. The court denied the motion.

The district court did not abuse its discretion in denying the second motion to amend. The court held that Nire was not a necessary party under Rule 19[8] because it had settled with defendants and could not affect any potential recovery by plaintiffs, which was and remained 95% of the total damages. It rejected as speculative and premature plaintiffs' argument that they could sue Nire if it refused to contribute for costs to analyze or repair the land and that they could presently seek declaratory relief against Nire to establish its obligations to plaintiffs. Plaintiffs have not explained why these conclusions

---

[8]A party is necessary under Rule 19(a) if: "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

8

were improper. Nire's presence in the suit could not affect plaintiffs' recovery from defendants; furthermore, there is no evidence that Nire has any intention of not contributing to costs related to the land if need be.[9] It may be true that plaintiffs had a currently viable declaratory relief claim against Nire,[10] but such a claim so tangential to the main issue in the case is insufficient to make a party necessary under Rule 19. The district court did not abuse its discretion in concluding that Nire was not a necessary party to the litigation.

Plaintiffs argue that even if Nire was not a necessary party, the court should have granted its motion under *Hensgens v. Deere & Co.*[11] This court in *Hensgens* held that "the district court, when confronted with an amendment to add a nondiverse

---

[9]Plaintiffs argue that Nire's presence would be needed somehow if its share of the final costs exceeded the amount it received in settlement. However, even if its share was *less* than the amount it received in settlement, Nire currently possesses the settlement money and would have to contribute it towards the reclamation. Thus, the possibility of Nire not contributing exists regardless of the settlement amount.

[10]For this proposition, plaintiffs cite *Miller v. Seven C's Properties, LLC*, 800 So.2d 406, 408-11 (La. App. 2001). Defendants argue that *Miller* is distinguishable because in that case the plaintiff brought a declaratory judgment action against his co-owner seeking contribution for repairs, and, after the co-owner denied the necessity of the repairs, the court found a sufficiently justiciable controversy to proceed. Here, the defendants argue, Nire does not deny the necessity of the proposed repairs and has not refused to contribute any repairs. We do not decide this issue.

[11]833 F.2d 1179, 1182 (5th Cir. 1979).

nonindispensable party, should use its discretion in deciding whether to allow that party to be added."[12]  It articulated four factors to consider when exercising this discretion: 1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; 2) whether the plaintiff has been dilatory in asking for an amendment; 3) whether the plaintiff will be significantly injured if the amendment is not allowed; and 4) any other factors bearing on the equities.[13]

We cannot hold that the district court's analysis of these factors was an abuse of discretion.  As the court held,[14] the manifest purpose of plaintiffs' actions was to defeat federal jurisdiction, the federal forum could provide complete relief to the parties, and, years after the petition was originally filed, the equities favored federal resolution of the case.

In addition, the district court did not abuse its discretion in denying the fourth motion to amend.  Under *S&W Enterprises*,

---

[12]*Id.*

[13]*Id.*

[14]The court did not analyze the *Hensgens* factors in ruling on the second motion to amend, only the fourth motion to amend. Nonetheless, the parties on appeal argue the *Hensgens* factors in relation to the second motion to amend – at least insofar as far as they distinguish the two motions, which they often do not.  In addition, the two motions are similar in nature, and the *Hensgens* factors are more properly applied to the second motion because the fourth motion, as explained later, is analyzed under a stricter standard since it was filed after a scheduling deadline.  Thus, we analyze the *Hensgens* factors as applied to the second motion.

*L.L.C. v. Southtrust Bank of Alabama, NA*, Rule 16(b) governs the amendment of pleadings after a deadline in a scheduling order has expired: "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[15]  Courts should consider four factors: 1) the explanation for the failure to move timely for leave to amend; 2) the importance of the amendment; 3) potential prejudice in allowing the amendment; and 4) the availability of a continuance to cure such prejudice.[16]

In denying the motion, the district court recited its ruling on the second motion and stated that the *S&W Enterprises* factors favored denial here: the "second attempt to add Nire is based on the same key fact, the settlement agreement, and the same fundamental principles of co-ownership....The plaintiffs have not demonstrated why this legal theory was not available [during the second motion] or why it could not have been anticipated at that time....An analysis of the [*S&W Enterprises*] factors reveals that the plaintiffs have not demonstrated good cause for filing their amended complaint."

Plaintiffs do not explain why this was an abuse of discretion.  Their only new argument on appeal seems to be that

---

[15]315 F.3d 533, 536 (5th Cir. 2003).

[16]*Id.*

they did not foresee the defendants' alleged "manipulation" of evidence using the settlement agreement. Plaintiffs do not explain why they could not have foreseen this alleged manipulation[17] and made this argument initially. Moreover, plaintiffs do not address the district court's finding of obvious prejudice to defendants (a change of venue) and the inability of a continuance to cure that prejudice.

For these reasons, the district court did not abuse its discretion in denying plaintiffs' two attempts to join Nire.

IV

Plaintiffs next challenge the district court's grant of summary judgment for defendants following its conclusion that all of their claims were prescribed and that the doctrines of *contra non valentem* and continuous tort did not apply.

Plaintiffs brought claims of tortious damage to land and breach of contract. In Louisiana, the prescriptive period is one year for damage to land and ten years for breach of contract, running from the date of breach.[18] The leaks here occurred

---

[17]In addition, we do not see how evidence was "manipulated" - the defendants stated merely that "[plaintiffs] have not provided any indication that [Nire] consents to the plaintiffs' proposes (sic) excavation...." Concluding from this statement that defendants "bought" Nire's aid, resulting in plaintiffs' ability to sue Nire, is speculation.

[18]LA. REV. STAT. ANN. art. 3492-93 (West 2005) (damage to land); *id.* art. 3499 (breach of contract).

12

between 1985 and 1987, and the suit was filed in 2001.  Because

the acts complained of occurred more than ten years ago,

plaintiffs relied on the *contra non valentem* exception, which

states that the period for any claim runs from when the plaintiff

knew or should have known of the damage or breach.[19]  Plaintiffs

claimed that they had no actual or constructive knowledge of the

leaks until October 24, 2000, less than a year before they filed

suit.  The district court disagreed, finding that they knew or

should have known of the leaks by late 1988 or early 1989.[20]  It

also found that there was no continuous tort because there was no

evidence of unlawful acts by defendants after 1987.  We review *de

novo*.[21]

Regarding actual or constructive knowledge, the record is

replete with references to pipeline leaks on the Hawthorne

property in various letters, affidavits, and depositions.  These

references were made by multiple people who worked for Hawthorne

---

[19]*Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000).

[20]Plaintiffs argue on appeal that the district court should have considered affidavits by two witnesses "clarifying" their earlier affidavits and denied a motion to strike those later affidavits.  Defendants disagree.  The district court held that, "[r]egardless of the admissibility of the second affidavits," summary judgment should be granted.  Like the district court, we do not decide whether the affidavits should be considered because we affirm that court's judgment that even if they are considered, summary judgment for the defendants is proper.

[21]*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 295 (5th Cir. 1999).

Land and Hawthorne Trust or who were familiar with the Hawthorne property.  On appeal, plaintiffs make two arguments: that these references were to unrelated brine spills resulting from the installation of two valve sites and replacement of the pipeline in 1988, and that the district court erroneously lumped Hawthorne Land and Hawthorne Trust together, imputing each's knowledge to the other.

There is no genuine issue of material fact that, at a minimum, plaintiffs should have known of the leaks at issue. Even if plaintiffs are correct that most of the references to "leaks" pertained to leaks resulting from installation of the valves and replacement of the pipeline, plaintiffs still should have known why the pipeline was replaced - because it had the leaks at issue.

Taylor Caffery, a lawyer employed by Nire,[22] wrote in a letter that he had "positive testimony of one eyewitness who says that a great deal of brine had been spilled when [Texas Brine] [was] changing the pipe that became *full of holes because of brine erosion* (emphasis added)."  In that same letter, Caffery stated that he told Peggy Scott, a representative of Hawthorne Trust, about the alleged leak during the pipeline replacement.

---

[22]Caffery previously had worked for Hawthorne Land and Hawthorne Trust, and it is highly likely that he was in contact with both during this period.  But, for purposes of appeal, we construe the facts favorably to plaintiffs and consider him to have been employed only by Nire.

14

And in another letter, that Scott received, Caffery wrote:

> [T]he changing of the pipes was necessitated because brine had corroded the pipe and was leaking out of it....[23]

Scott, and thus Hawthorne Trust, were or should have been aware that the pipeline was being replaced, and that it was being replaced because it had eroded and was leaking.[24]

Furthermore, Hawthorne Land should have known why the pipeline on its land was replaced. Plaintiffs argue that Hawthorne Trust's knowledge cannot be imputed to Hawthorne Land. No such imputation is necessary. Plaintiffs concede that Clifford LeBlanc, property manager for Hawthorne Trust, knew that the pipeline was replaced and told Hawthorne Land about its replacement. Although plaintiffs argue that LeBlanc and

---

[23]Caffery also prepared an affidavit, signed by a former Texas Brine employee in 1989, stating the following:

> [T]here are lots of leaks in the pipeline going through the Hawthorne property in St. James Parish. I think we found around twenty holes in the pipe. We would find a leak by seeing dead trees around it and knew what had happened. The brine had escaped into the area and killed the trees and we would go and repair that section of the pipe. The leaks must have occurred over a period of four or five years . . . . The acreage where the biggest spill occurred is where the pipeline was replaced.

[24]We recognize that Scott seems to state in her second affidavit that the only leaks she was aware of were those relating to the pipeline replacement. In light of the information she received from Caffery that the pipeline was being replaced because it was being eroded, at the very least she *should* have known of the leaks at issue here. Her second affidavit is insufficient to cast doubt on that conclusion.

Hawthorne Land never knew about the leaks at issue,[25] at the very least they should have known that the pipeline was replaced for a reason - brine leaks caused by erosion.

Thus, we agree with the district court's conclusion that plaintiffs knew or should have known of the leaks at issue by late 1988 or early 1989. We also reject plaintiffs' argument that the prescriptive period should be tolled because defendants intentionally hid knowledge of the leaks at issue;[26] there is insufficient evidence to support this claim.

Finally, we agree with the district court that the continuous tort doctrine does not apply. For that doctrine to apply, the conduct, and not just the damage, must be continuous.[27] Their argument that the brine itself has

---

[25]Plaintiffs contend that Texas Brine told LeBlanc it needed to perform routine "maintenance" on the pipeline, which is why LeBlanc stated in a letter to Hawthorne Land that the pipeline was "faulty" while informing it of the arrangements for that maintenance. They argue that instead of performing maintenance on the pipeline, Texas Brine replaced it, which LeBlanc and plaintiffs discovered shortly thereafter. Thus, they argue, LeBlanc's reference to the pipeline being "faulty" did not refer to the leaks at issue. Defendants assert that LeBlanc stated that he learned of a number of leaks on the property from Lawrence Ordoyne, a neighbor, that he personally observed those leaks, and that he discussed them with Scott, Caffery, and Hawthorne Land. Plaintiffs counter by pointing to LeBlanc's second affidavit, in which he stated that those leaks were not the leaks at issue here.

[26]*Corsey v. Louisiana*, 375 So. 2d 1319, 1319-21 (La. 1979) (describing the doctrine that the prescriptive period does not run where the defendants intentionally hide knowledge from the plaintiffs or otherwise impede their ability to file suit).

[27]*Boudreaux v. Jefferson Island Storage & Hub*, 255 F.3d 271, 273-74 (5th Cir. 2001).

16

continually trespassed on the land is foreclosed by this court's opinion in the perfectly analogous case of *Boudreaux v. Jefferson Island Storage & Hub*.[28]

V

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[28]*Id.* (holding that the continued presence of saltwater under a landowner's property was not a continuing tort for prescriptive purposes).