# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 11, 2011

No. 10-30880

Lyle W. Cayce
Clerk

ADAMS FAMILY TRUST

Plaintiff–Appellant

v.

JOHN HANCOCK LIFE INSURANCE COMPANY, U.S.A.,
formerly known as Manufacturers Life Insurance Company, U.S.A.

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:09-CV-1625

Before HIGGINBOTHAM, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[1]

The Adams Family Trust ("the Trust") appeals the district court's denial of the Trust's motion for leave to amend its complaint so that it could allege with greater particularity its fraud claim against the defendant John Hancock Life Insurance Company ("John Hancock"). We affirm. The Trust's proposed amendment would have been futile: the district court granted summary judgment in favor of John Hancock, and amending the complaint would not have

---

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30880

enabled the Trust to defeat summary judgment. Consequently, it was not an abuse of discretion for the district court to deny the motion for leave to amend.

I.

This dispute centers around a life-insurance policy that the Trust purchased from John Hancock in August 2001 to insure the life of Mary Helen Adams, the mother of the two trustees. Because Adams was 75 and in poor health at the time the policy was purchased, she was unable to qualify for a traditional life-insurance policy. Instead, the Trust purchased a specialized life-insurance policy from John Hancock: a Venture VUL Flexible Premium Variable Universal Life Insurance Policy featuring a no-lapse guarantee ("the Policy"). Under the Policy, the Trust agreed to pay premiums to John Hancock in exchange for John Hancock's promise to pay a $1 million benefit upon Adams's death. John Hancock's obligation to pay the death benefit was conditioned on the Trust's paying sufficient premiums to prevent the Policy from terminating. John Hancock regularly incurred a variety of expenses in administering the Policy. John Hancock would deduct those expenses from the Policy's balance every month. The Trust was obligated to pay sufficient premiums so that the Policy maintained a high enough balance to cover its monthly expenses. The amount of premiums to be paid was not fixed or predetermined. The Policy's premiums tracked its expenses, and the expenses were variable. Ordinarily the Policy's balance would be calculated on the 24th of each month. If the Policy did not have a high enough balance to cover its expenses as of that date, the Policy would go into default. If the default was not cured within a sixty-one-day grace period, the Policy would terminate.

The Policy's no-lapse guarantee gave the Trust the option of making an annual payment, known as the planned premium, that was guaranteed to prevent the Policy from going into default any time in the twelve months after the planned premium was paid. In other words, when the Trust paid the

2

planned premium, the Policy's balance—and thus its status as in default or out-of default—was calculated annually instead of monthly. But the Trust chose to pay the planned premium only once, in the first year it owned the Policy. As a result, in subsequent years John Hancock determined the Policy's status as in or out-of default on a monthly basis. Each time the policy went into default, John Hancock sent the Trust a Policy Termination Warning Notice that listed the amount the Trust needed to pay within sixty-one days to bring the Policy out of default and prevent the Policy from terminating. The amount listed in each notice was the amount that was estimated—although not guaranteed—to be sufficient to keep the Policy in force for approximately three months after the date of default. The first time the policy went into default and the Trust received a notice, it made a substantial payment that kept the policy out of default for the next year. Thereafter, each time the Trust received a notice it paid exactly the amount listed on the notice and no more. As a result, a pattern developed in which the Policy went into default every three months (on the 24th of February, May, August, and November) from May 24, 2004, until August 24, 2008 (eighteen more times in total).

Up until the payment made following the August 24, 2008 default, each payment was, as estimated, sufficient to keep the Policy out of default for the next three months. But the payment that was made following the August 24, 2008 default only kept the Policy out of default for two months. The Policy thus went into default for a twentieth and final time on October 24, 2008 (whereas in 2004, 2005, 2006, and 2007, default had not occurred until November 24). John Hancock sent a notice dated October 24, 2008, stating that payment was required no later than December 24, 2008. Based on its prior payment history, the Trust was not expecting to make another payment until January 24, 2009, so it mistakenly concluded that the notice dated October 24, 2008, had been sent in error. For that reason, the Trust disregarded the notice and failed to submit

No. 10-30880

the payment needed to prevent the Policy's termination. The Policy terminated on December 24, 2008. John Hancock declined to reinstate the Policy and took the position upon Ms. Adams's death that it was not obligated to pay out the $1 million death benefit.

The Trust responded by filing suit in Louisiana state court. The state-court petition alleged that the Trust's payment history from 2004 to 2008 is evidence that the parties amended the Policy by custom and/or implied agreement to agree that billing would only take place on a quarterly basis and that John Hancock's cancellation of the policy based on the Trust's failure to make a fifth payment in 2008 constituted a "unilateral, arbitrary, capricious and bad faith, if not negligent effort to alter and amend the terms of the parties' implied agreement, practice and custom of both billing and paying variable premiums in quarterly installments." The petition also contained an allegation of fraud. The Trust alleged that John Hancock was engaged in a scheme to fraudulently induce the purchase of variable-rate insurance contracts by falsely advertising that the policies contained no set payment schedule and promising that a payment schedule could be agreed upon by custom, when in actuality it was John Hancock's practice to send arbitrary, unscheduled demands for payment and to unilaterally cancel the policies upon nonpayment.

John Hancock removed the case to federal district court in September 2009. The district court entered a Rule 16(b) scheduling order that set February 19, 2010, as the deadline for joinder of parties and amendment of pleadings and May 20, 2010, as the discovery-completion deadline. In March 2010, the Trust conducted a Rule 30(b)(6) deposition of John Hancock's corporate representative.

According to the Trust, the key to this case is a document that John Hancock produced for the first time during a break from the corporate representative's deposition. This document, the Trust suggests, contained the critical information the Trust needed to allege in detail the particulars of the

4

No. 10-30880

fraudulent scheme it had pled in its state-court petition.  The Trust contends that it was not until it read the last page of this document, which the Trust labels an "agency agreement," that it first had reason to believe that its decision to purchase the Policy had been induced by John Hancock's fraud.

On March 26, 2010, the Trust moved to extend the scheduling order's deadline for the amendment of pleadings so that the Trust could "assert alternative demands against John Hancock."  But instead of laying out those alternative demands, the Trust asked the district court to give it until May 15, 2010 (just five days before the close of discovery), to file an amended complaint. The Trust did not give detailed reasons for why it needed its amendment; nor did it provide the district court with a copy of the proposed amendment.  The magistrate judge denied the motion on the ground that the Trust had not shown good cause for its failure to meet the scheduling order's deadline for the amendment of pleadings. The Trust filed objections to the magistrate judge's decision, which the district court overruled.

About a month later, the district court granted John Hancock's motion for summary judgment on the grounds that John Hancock's termination of the Policy was caused by the Trust's failure to remit payment in response to the October 24, 2008 notice and that the termination was consistent with and authorized by the Policy's express terms.  In granting summary judgment, the district court rejected the Trust's fraud claim on its merits.  The Trust's fraud claim was predicated on the factual allegation that John Hancock had made demands for payment that were not authorized by the Policy, and the district court concluded that John Hancock terminated the Policy "in accordance with its terms."

II.

The sole issue on appeal is whether the district court abused its discretion by refusing to allow the Trust to amend its complaint so as to allege  fraud with

No. 10-30880

greater particularity.[2] We review a district court's decision to deny a motion for leave to amend for an abuse of discretion.[3] "Federal Rule of Civil Procedure 16(b) governs amendment of pleadings once a scheduling order has been issued by the district court."[4]  Rule 16(b) provides that a scheduling order "may be modified only for good cause."[5] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[6]  If the moving party can show good cause to modify the scheduling order, then the district court should apply "'the more liberal standard of Rule 15(a)'"[7] and "freely give leave when justice so requires."[8]

In this case, we need not determine whether the Trust established good cause for modifying the scheduling order.  Even if it had, Rule 15(a) authorizes

---

[2] In the introduction to its opening brief, the Trust suggests that the district court erred when it granted summary judgment "by making an incomplete and erroneous analysis of the law and impermissibly ignoring evidence in the record."  However, there is no further challenge anywhere in the brief to the merits of the grant of summary judgment. "Arguments inadequately briefed on appeal are waived," *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.2 (5th Cir. 2008) (per curiam), and a single, unadorned sentence of argument constitutes inadequate briefing, *see, e.g.*, *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 407 n.9 (5th Cir. 2009). Thus, the Trust has waived its challenge to the district court's decision to grant summary judgment in favor of John Hancock. *See generally Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 . . . saddles the non-movant with the duty to designate the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition.  Nor is it our duty to so scrutinize the record on appeal." (internal citations and quotation marks omitted)).

[3] *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009).

[4] *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).

[5] FED. R. CIV. P. 16(b)(4).

[6] *S&W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)).

[7] *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005) (per curiam) (quoting *S&W Enters.*, 315 F.3d at 536).

[8] FED. R. CIV. P. 15(a)(2).

No. 10-30880

a district court to deny a motion for leave to amend where the "amendment would be futile,"[9] and the Trust's proposed amendment would have been futile. According to the Trust, its proposed amendment pertained to the same misconduct it alleged in its original state-court petition and would have done nothing more than clarify, supplement, and more particularly plead the original allegations of fraud. But the district court did not dismiss the Trust's fraud claim as inadequately pled. It adjudicated the fraud claim on its merits by granting John Hancock's motion for summary judgment. A plaintiff such as the Trust that is seeking "to avoid summary judgment as to an issue on which it would bear the burden of proof" at trial "may not rest on the allegations of its pleadings."[10] Pleadings are not competent summary-judgment evidence.[11] The party opposing summary judgment must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."[12]

Having an amended complaint on file would not have enabled the Trust to defeat John Hancock's motion for summary judgment. If, as the Trust now argues, the "agency agreement" that it obtained in March 2010 was evidence of some kind of fraudulent scheme, the Trust should have submitted that document to the district court and relied it on it as summary-judgment evidence. But the Trust failed to do so. An amended complaint containing more particularized

---

[9] *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). A futile amendment need not be allowed under Rule 16(b). *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 & n.38 (5th Cir. 2010) (citing cases); *see also Garcia v. Unit Drilling Co.*, 396 F. App'x 133, 136 (5th Cir. 2010) (per curiam) (unpublished); *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) (per curiam) (unpublished). Although these prior unpublished decisions do not bind us, *see* 5TH CIR. R. 47.5.4, we find their reasoning persuasive.

[10] *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

[11] *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

[12] *Id.*

No. 10-30880

allegations of fraud would not have overcome the Trust's lack of evidence to substantiate those allegations: "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[13]   Since John Hancock would have prevailed even if the Trust's motion for leave to amend had been granted, the Trust's proposed amendment was futile.[14]

## III.

Because the Trust's proposed amendment was futile, we affirm the district court's decision to deny the Trust's motion for leave to amend its complaint.

AFFIRMED.

---

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[14] *Cf. Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) ("'[I]f a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile.'" (quoting 6 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 1489 (2d ed. 1990))).