# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2025

Lyle W. Cayce
Clerk

No. 25-20093

United States of America *ex rel.* Deidra Gentry,

*Plaintiff—Appellant*,

*versus*

Encompass Health Rehabilitation Hospital of Pearland, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-1291

Before Higginbotham, Ho, and Douglas, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

This is an appeal from a Rule 12(b)(6) dismissal with prejudice of a *qui tam* action under the False Claims Act. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

No. 25-20093

**I**

Inpatient-rehabilitation facilities (IRFs) serve patients with evolving needs after discharge from acute-care hospitals. Patients receive intensive, interdisciplinary therapy under the close supervision of physicians.[1] Medicare[2] reimburses IRFs a per-discharge amount using set rates adjusted for facility and patient characteristics.[3]

To get paid, an IRF must conduct a screening within 48 hours before a patient is admitted.[4] The preadmission screening memorializes the clinicians' rationale for admitting a patient, which CMS auditors later review.[5] Medicare rules also permit nonclinical-personnel involvement, *i.e.*, in an information-gathering capacity:

> Although clinical personnel are required to evaluate the preadmission screening information . . . *each IRF may determine its own processes for collecting and compiling the preadmission screening information.* The focus of the review of the preadmission screening information will be on its completeness, accuracy, and the extent to which it supports the appropriateness of the IRF admission decision, not on how the process is organized.[6]

---

[1] Ctrs. for Medicare & Medicaid Servs., Pub. No. 100-02, *Medicare Benefit Policy Manual*, ch. 1 §§ 110.2.1, .2, .4 (MBPM).

[2] The Medicare Act establishes a federal program that provides medical items and services to elderly and disabled people and charges the secretary of the Department of Health and Human Services with administering it. 42 U.S.C. § 1395 *et seq.* The secretary has delegated much of that responsibility to the Centers for Medicare & Medicaid Services (CMS), housed within HHS. 66 Fed. Reg. 35,437 (July 5, 2001).

[3] 42 U.S.C. §§ 1395d(a), 1395ww(j).

[4] 42 C.F.R. § 412.622(a)(4)(i)(A).

[5] *Id.* § 412.622(a)(4)(i)(B)–(D); MBPM, ch. 1 § 110.1.1.

[6] MBPM, ch. 1 § 110.1.1 (emphasis added).

No. 25-20093

Encompass Health Rehabilitation Hospital of Pearland, L.L.C., is an IRF that employed Deidra Gentry as a sales representative. Gentry raised concerns about how Encompass trains and utilizes sales representatives in the preadmission-screening process. Encompass terminated Gentry after she had worked there for about five months.

Weeks later, Gentry filed this *qui tam* action under the False Claims Act (FCA), 31 U.S.C. § 3729, in federal district court. She alleges Encompass (1) presented false claims to Medicare, (2) used false records to get those claims paid, and (3) conspired to get false claims paid. 31 U.S.C. § 3729(a)(1)(A)–(C). Gentry filed her first amended complaint,[7] the government declined to intervene, and Gentry served Encompass. The magistrate judge entered a docket-control order setting August 1, 2024, as the deadline to seek leave to amend pleadings.

Encompass moved to dismiss under FED. R. CIV. P. 12(b)(6). Gentry filed her second amended complaint without leave of court in March 2024,[8] which the magistrate judge struck for noncompliance with Rule 15 and later accepted after Gentry properly requested leave. Encompass again moved to dismiss Gentry's second amended complaint.

―――――――――――――――――――

[7] Gentry claims the government requested she file a "corrected original complaint" to fix a "scrivener's error" and that the magistrate judge accepted it as such. This "corrected" complaint names a different defendant than the original. In filing her "corrected" complaint, Gentry asserts she did not "amend [her] pleading once as a matter of course" as provided by FED. R. CIV. P. 15(a)(1). There is no record support for Gentry's characterization of her September 23, 2023, pleading; indeed, the court docketed it as an "amended complaint." The court will treat it as such. Gentry's live pleading is her second amended complaint.

[8] Gentry repleaded her claims for false presentment, false records, and conspiracy under the FCA and dropped her state law claim.

No. 25-20093

The magistrate judge recommended the court (1) grant Encompass' motion to dismiss on all claims, finding Gentry's second amended complaint insufficiently plausible and particular under FED. R. CIV. P. 8(a) and 9(b), and (2) deny Gentry's request for leave to amend as futile under FED. R. CIV. P. 16. Gentry filed objections. The district court adopted the magistrate judge's report and recommendation and entered final judgment. Gentry timely appealed.

## II

### A

We review a grant of a Rule 12(b)(6) motion *de novo*.[9] A complaint will survive dismissal for failure to state a claim if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[10] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice[;]" the court must strip and disregard them from the pleading, even if consistent with liability.[11]

In addition, Rule 9(b)'s heighted pleading standard applies to FCA claims.[12] Fraud giving rise to FCA liability must be stated "with particularity," meaning the "who, what, when, where, and how of the alleged fraud."[13] But where, as here, the relator "cannot allege the details of an actually

---

[9] *Butler v. S. Porter*, 999 F.3d 287, 292 (5th Cir. 2021).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted); FED. R. CIV. P. 8(a).

[11] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quotation and citations omitted); *Iqbal*, 556 U.S. at 678.

[12] *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2008) ("Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading.").

[13] FED. R. CIV. P. 9(b); *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quotations and citation omitted).

submitted false claim," the complaint must provide "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."[14] Still, the court may not "make guesses to fill in the blanks" regarding the fraud's operative facts.[15]

## B

We review a denial of leave to amend for abuse of discretion.[16] Under Rule 15, a party may amend its pleading "once as a matter of course" within 21 days of its service or 21 days after a responsive pleading or Rule 12 motion is served.[17] Otherwise, a party may amend its pleading only with the opposing party's consent or the court's leave, which should be "freely given when justice so requires."[18] "It is within the district court's discretion to deny a motion to amend if it is futile," meaning the proposed "amended complaint would fail to state a claim upon which relief could be granted."[19]

If, however, the request for leave comes after the amended-pleadings deadline has passed, Rule 16 governs.[20] Under Rule 16's stricter standard, a court should grant leave only when "good cause" exists, considering (1) the movant's reason for untimely seeking leave, (2) the importance of the proposed amendments, (3) the potential prejudice to the nonmovant, and

---

[14] *Grubbs*, 565 F.3d at 190.

[15] *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020).

[16] *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002).

[17] Fed. R. Civ. P. 15(a)(1).

[18] Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[19] *Stripling v. Jordan Prod. Co. LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000).

[20] Fed. R. Civ. P. 16(b) (authorizing district court to manage pretrial proceedings through a scheduling order).

No. 25-20093

(4) whether a continuance may cure that prejudice.[21] As with Rule 15, "futile amendment need not be allowed."[22]

### III

Gentry argues the district court erred when it (1) found her second amended complaint fails to state a claim under Rules 8(a) and 9(b) and (2) dismissed her claims with prejudice. We disagree.

### A

To survive a motion to dismiss, an FCA relator must plead facts sufficient to support a finding that the defendant: (1) made "a false statement" or performed a "fraudulent course of conduct;" (2) "with the requisite scienter"—meaning actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity the information; (3) that was material; and (4) caused the government to pay out or forfeit money in connection with a claim.[23] The district court found Gentry fails to sufficiently plead falsity and fails to connect her allegations to the submission of a false reimbursement claim, *i.e.*, the first and fourth elements.

Gentry pleads two theories to support her allegation that Encompass made a false statement or carried out a fraudulent course of conduct. First, she alleges Encompass trained non-clinician sales representatives on "how to operate as clinical screeners," providing them with "directives on how to

---

[21] *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003).

[22] *Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 381 n.9 (5th Cir. 2011).

[23] *United States ex rel. Longhi v. Lithium Power Techs. Inc.*, 575 F.3d 458, 466–67 (5th Cir. 2009) (citation omitted); *see also United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 626 F. App'x 528, 531–32 (5th Cir. 2015) (elements of false-presentment and false-record claims under § 3729(a)(1)(A) and (B) are the same).

No. 25-20093

tailor clinical language and make clinical judgments in order to generate patient admissions" to the facility. Second, she alleges Encompass' physicians "had no practical ability" to evaluate the sales representatives' screening narratives because physicians were "bombarded by several requests from sales representatives in very short times to certify the admissions such that [Gentry] witnessed certifications being electronically entered within one minute of the requests." In other words, Gentry alleges physicians admitted patients to IRF by rubberstamping the non-clinical judgment of sales representatives, in violation of CMS's requirement that clinicians exercise their medical judgment in making admission decisions.

Gentry fails to sufficiently plead either theory. Even if true, her claim that she gathered clinical information to produce screening narratives is facially benign. Medicare permits nonclinical personnel to gather data for IRF preadmission screenings. Indeed, the agency confirmed via informal guidance that it is not concerned with who collects and compiles the screening information, so long as a clinician evaluates it and makes the final admission decision.[24] Gentry does not allege *how* sales representatives, like herself, operated as clinicians who provided clinical judgments or medical justifications in the screening process. And while she characterizes her narratives as "misleading" because of Encompass' directives, she pleads no facts suggesting the information Encompass told her to include was false or otherwise misrepresented a patient's need for IRF services. The complaint recites details of three specific patients but does not explain how Gentry's screening narratives were false or led to the admission of patients who did not require treatment.

---

[24] CMS, *IRF Coverage Requirements Conference Call Transcript*, at 8–9 (Nov. 12, 2009), https://perma.cc/CDJ5-GVY5.

Moreover, the complaint contains no fact suggesting admission decisions rested with anyone other than physicians. Gentry fails to allege how she directly influenced any physician's decision to admit a patient with her "misleading" narratives. As the district court observed, physicians could very well consider other information in the patient's record and exercise their independent medical judgment in making admission decisions. Gentry's inference that physicians did not "evaluate the preadmission screening information" based on timing alone is speculative at best. For these reasons, Gentry's complaint fails to plead sufficient facts to satisfy the falsity element under Rule 8(a) or 9(b).

Same goes for the final element, the submission of false claims. Gentry alleges "Medicare was routinely billed based on the implementation of this process at these hospitals." But she fails to accompany this conclusory allegation with details of an actually submitted false claim—*i.e.*, there are no facts about how her "misleading clinical narrative" led to billing, what services were improperly billed for, which patients were billed for medically necessary services that they never received, nor who submitted false claims. Although *Grubbs* permits a relator lacking such details to survive a motion to dismiss by pleading a "scheme" with facts that give rise to a "strong inference" of false-claim submissions, Gentry comes nowhere close.[25] She offers no rational connection between her role in the allegedly faulty admission process and the submission of false claims. *Grubbs* requires more than speculation.

Encompass puts it well:

> Gentry should have pointed to factual pleadings in her operative complaint showing a single instance in which a nonclinical employee evaluated the gathered preadmission screening information; drafted a false admission recommendation;

---

[25] *Grubbs*, 565 F.3d at 190.

presented the recommendation to an admitting physician who relied solely on the nonclinical employee's evaluation and nothing else when admitting a patient who objectively did not meet the appropriate medical necessity requirements; and for which Encompass Health subsequently billed Medicine.

Because she did not, the district court did not err when it found her second amended complaint insufficiently plausible and particular. Furthermore, the district court properly found these deficiencies preclude both her false-presentment and false-reporting claims, as they share the same elements, along with her conspiracy claim, as there can be no liability for conspiracy without an underlying violation of the FCA.[26]

**B**

Gentry argues dismissal should have been without prejudice. As a threshold issue, the court determines whether Rule 15 or 16 governs Gentry's request for leave to amend in her response to Encompass' motion to dismiss. Rule 16's good-cause showing kicks in only after the deadline for amended pleadings has passed; otherwise, the court applies Rule 15's more liberal standard.[27]

Gentry requested leave to amend on May 15, 2024, two-and-a-half months *before* the amended-pleadings deadline on August 1, 2024. And Rule 15 governs requests for leave filed prior to the scheduling order's pleading

---

[26] *See Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019) ("[W]hen plaintiffs fail to state a claim for any underlying tort, their claims for civil conspiracy likewise fail."); *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999) (general civil conspiracy principles apply to conspiracy claims under the FCA); *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (same).

[27] *S&W Enters., L.L.C.*, 315 F.3d at 535–36.

deadline. So the district court erred insofar as it found Rule 16 governed Gentry's request for leave.[28]

This error, however, is inconsequential. The court denied leave on futility grounds, which is permissible under Rule 15 or 16. The district court found amendment would be futile because "Gentry has already amended her complaint twice and has not shown what additional facts or information she could provide that would make amendment fruitful." We agree. Gentry admits—*after* reviewing Encompass' two motions to dismiss explaining, in detail, where and how her second amended complaint fails to state a claim—that it was "not remotely clear as to what is deficient at this stage." The magistrate judge's memorandum and recommendation, adopted in full by the district court, further elucidates those deficiencies. If it is not yet clear to Gentry how to remedy her case's factual insufficiencies, the requisite facts probably do not exist. The district court did not abuse its discretion in denying Gentry leave to amend and entering dismissal with prejudice.[29]

---

[28] *S&W Enterprises* held "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *Id.* at 534–36 (Rule 16(b) applied where plaintiff sought leave three months after the amended-pleadings deadline); *see also Banks v. Spence*, 114 F.4th 369, 371 n.1 (5th Cir. 2024), *cert. denied sub nom. Holston Banks v. Spence*, 145 S. Ct. 1082 (2025) (stating Rule 16(b) "applies to untimely motions to amend" where plaintiff sought leave to amend 134 days after the deadline); *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021) (same). The district court applied that statement in its broadest sense, *i.e.*, that Rule 16(b) applies to any analysis unfolding after the amended-pleadings deadline has passed, regardless of when the plaintiff moved for leave. Such a reading is unfair to the plaintiff, as it has no control over when the district court may take up its request for leave to amend. Moreover, Gentry did not seek leave at the buzzer here—she filed her request eleven weeks before the scheduling order's deadline, and nearly seven months passed before the district court denied her leave.

[29] This dismissal operates without prejudice as to the United States. *See United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 456 (5th Cir. 2005).

No. 25-20093

## IV

The district court did not err when it dismissed Gentry's claims with prejudice under Rule 12(b)(6). We AFFIRM.

No. 25-20093

James C. Ho, *Circuit Judge*, concurring:

I concur. I write separately to note that, in an appropriate case, we should revisit whether there are serious constitutional problems with the *qui tam* provisions of the False Claims Act.

In the past, I've observed that federal civil service laws infringe upon the President's executive power under Article II of the Constitution. "Federal civil service laws make it virtually impossible for a President to implement his vision without the active consent and cooperation of an army of unaccountable federal employees." *Feds for Medical Freedom v. Biden*, 63 F.4th 366, 390 (5th Cir. 2023) (en banc) (Ho, J., concurring). "And that presents a rather curious distortion of our constitutional structure." *Id.* "The Constitution requires the President, the Vice President, and every member of Congress to stand for re-election if they wish to continue holding federal office and exercising federal power. Meanwhile, countless Executive Branch employees have the ability to influence or implement federal policy in their capacity as subordinates of the President—yet they enjoy a *de facto* form of life tenure, akin to that of Article III judges." *Id.* at 390–91.

*Qui tam* relators present similar constitutional concerns. They presume to represent the United States government in federal court, and to defend the interests of the United States Treasury against fraud. But like federal civil servants, they are neither appointed by, nor accountable to, the President. So it's not surprising that many members of the federal judiciary have expressed repeated constitutional concerns about the *qui tam* provisions of the False Claims Act. *See, e.g.*, *United States ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *id.* at 442 (Kavanaugh, J., concurring); *United States ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032, 1050 (6th Cir. 1994) (Nelson, J.,

concurring); *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp.3d 1293 (M.D. Fla. 2024).

Alas, our en banc court has previously confronted—and by an overwhelming vote, rejected—these constitutional concerns. *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc). Judge Smith authored a lonely dissent in that case. *See id.* at 758. He was joined by just one other member of the court, and that member no longer serves with us.

To my mind, Judge Smith's dissent in *Riley* demonstrates why we should not discourage lonely voices from speaking out and attempting to uncover the truth. However the chips may fall, the law is advanced when we allow a single judge to stand against the tide and identify error—even when no one else is willing to do so—and even when others are critical. *See*, *e.g.*, *United States v. Bell*, 130 F.4th 1053, 1054 (5th Cir. 2025) (Ho, J., concurring in the denial of rehearing en banc) (citing examples of solo dissents).

Justice Scalia used to say that he writes majority opinions for the lawyers—and dissents for the law students. *See*, *e.g.*, Jennifer Senior, *In Conversation: Antonin Scalia*, NEW YORK, Oct. 4, 2013, *available at* https://nymag.com/news/features/antonin-scalia-2013-10/. And thank goodness that he did. Just because an opinion isn't joined by other judges doesn't mean it's wrong. And just because an opinion is a solo dissent or concurrence today doesn't mean it can't become a majority in the future. Indeed, that's the whole purpose of a dissent—to convince judges someday to chart a different course.

I would be remiss, as a matter of transparency if not collegiality, if I did not acknowledge that Judge Duncan has already called on our court to revisit *Riley*. *See United States ex rel Montcrief v. Peripheral Vascular Associates, P.A.*, 133 F.4th 395, 410 (5th Cir. 2025) (Duncan, J., concurring). Had I been on that panel, I would have joined him. I'm pleased to do so now.